UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES COOK, | ) | CASE NO. 5:12-CV-657 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION & ORDER** |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 16). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff James Cook's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On February 13, 2008, Plaintiff James Cook ("Plaintiff" or "Cook") applied for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of September 30, 2007. (Tr. 127, 130). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 100, 103). Thereafter, Plaintiff requested a hearing to contest the denial of his applications for benefits. (Tr. 121). The Social Security Administration granted Cook's request and scheduled a hearing before an administrative law judge. (Tr. 124).

On May 21, 2010, Administrative Law Judge Edmund Round (the "ALJ") convened a hearing to evaluate Plaintiff's applications for benefits.  (Tr. 34).  Cook appeared via video teleconference from Akron, Ohio with counsel and testified before the ALJ.  (Tr. 36).  Impartial vocational expert Ted S. Macy ("Macy" or "VE") also appeared and testified at the proceeding.  (*Id.*).  On July 29, 2010, the ALJ issued an unfavorable decision denying Cook's requests for benefits.  (Tr. 13).  Following this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr. 11).  However, the council denied Cook's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1).  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff was born on October 19, 1967, making him 39 years old on the alleged disability onset date, and 42 years old at the issuance of the ALJ's decision.  (Tr. 127).  Plaintiff speaks English and has a high school education.  (Tr. 153, 159).  Plaintiff served in the United States Navy from 1986 to 1989 and was honorably discharged for psychological reasons.  (Tr. 131).  Plaintiff previously worked as a retail sales associate, an eyeglass technician, a printer, and in a gas company accounting department, but has been unemployed since the alleged disability onset date.  (Tr. 139-146, 155, 182).

## 1. RELEVANT MEDICAL HISTORY

Plaintiff alleges he has been suffering from mental health problems involving depression and anxiety all his life.  (Tr. 154).  He has received mental health treatment from Portage Path Behavioral Health ("PPBH") and Akron CBOC for several years, beginning in 2001, where he was diagnosed with bipolar disorder and alcohol/substance abuse.  (Tr. 156, 272-274).  Plaintiff was evaluated and treated regularly by PPBH and Akron CBOC staff, most often by Nurse Practitioner Benson, on multiple occasions by Dr. Jagar, and by various other nurses and

2

clinicians.  (Tr. 268-320).  Treatment records show Plaintiff complaining of depression, anxiety and panic attacks, tremors, insomnia, paranoia, periods of heightened energy, problems with social interaction and agoraphobia, inability to handle stress, crying spells, suicidal thoughts, nightmares and traumatic flashbacks, and lack of an ability to concentrate.  (*Id.*).  Records additionally indicate varying degrees of alcohol use, varying from claims of daily use to once a month or less, to claims of periods of sobriety.  (*Id.*).

Plaintiff submitted reports alleging the extent of his condition and limitations.  In Plaintiff's Social Security Disability Reports, Plaintiff indicates severe depression and anxiety, accompanied with suicidal thoughts, panic attacks, crying, inability to sleep, mania, fear of leaving the house, fear of others, tremors, and severe body aches and fatigue.  (Tr. 154, 204).  In his Social Security Function Report, filled out March 10, 2008, Plaintiff repeats these symptoms and states that it is hard to impossible for him to leave his apartment, claims he cannot work and cannot stand talking to anyone or being touched, and that he has severe difficulty sleeping.  (Tr. 173-174).  Plaintiff further claims minimal personal grooming, mainly that he wears the same clothes every day and does not care about laundry, bathes only once every two weeks, shaves at most once a month, and that he doesn't care about eating.  (Tr. 175).  Plaintiff also alleges his hand tremors make it difficult to shave or eat, but that he does occasionally prepare his own meals, cleans and does laundry, and handles his finances.  (Tr.175-177).  Plaintiff claims he has no social involvements or activities and that he cannot stand to be around others, but that he spends time with other people when he gets rides to appointments and the food bank.  (Tr. 176).  The form also states Plaintiff cannot handle any stress or changes in routine, and that he has been fired from every job he has ever had due to his mental illness.  (Tr. 179).

### a. NURSE PRACTITIONER BENSON

3

The record shows Plaintiff obtained treatment from Will D. Benson ("NP Benson"), a Nurse Practitioner, regularly for his impairments between December 2008 and April 2010.  (Tr. 268-320).  At each of these meetings, Plaintiff generally exhibited fair to good grooming and hygiene, and exhibited no acute distress but at times complained of hand tremors. (Tr. 269-271, 279, 286, 313).   In his notes from Plaintiff's initial consult, dated December 18, 2008, NP Benson reports Plaintiff has issues with depression and anxiety, and is diagnosed with bipolar II disorder and alcohol abuse disorder.  (Tr. 274).  He also notes that Plaintiff has a history of alcoholism, and lists alcohol and drug abuse as a chronic risk factor.  (Tr. 270, 272).  He states Plaintiff was advised to drink below recommended limits, and they discussed medical problems associated with alcohol use, including liver disease, medication interactions, psychiatric disorders, and depression.  (Tr. 270).  On multiple occasions Plaintiff was referred to counseling with Mr. Clepper for his alcohol abuse disorder.  (Tr. 273-274, 281, 288, 295).

NP Bensons notes regarding Plaintiff's drinking habits vary throughout the course of his treatment.  Initially, Plaintiff is noted to drinking two beers per night, or one to two beers per day.  (Tr. 269-270).  At his follow-up in January 2009, his social history lists Plaintiff's alcohol and drug use as 'rare," but again diagnoses Plaintiff with alcohol abuse disorder.  (Tr. 292, 295).  The next two months Plaintiff is again diagnosed with alcohol abuse disorder, but notes indicate Plaintiff reports drinking one beer, two to three times per week, then down to only one per week.  (Tr. 279, 286).  By June 2009, Plaintiff reports drinking only one beer per month and NP Benson's notes no longer specify a diagnosis of alcohol abuse disorder.  (Tr. 312-315, 317-318).  NP Benson's notes report Plaintiff's claims of complete abstention from alcohol, beginning in October 2009.  (Tr. 341, 345-346).  On April 21, 2010, NP Benson's treatment notes report that Plaintiff denies any alcohol use for the previous four to five months.  (Tr. 363).

4

Also on April 21, 2010, NP Benson filled out a Medical Source Assessment for Plaintiff. In his assessment, NP Benson opined Plaintiff, while able to perform tasks or functions, would have noticeable difficulty for more than twenty percent of the work day or work week for tasks involving:  remembering locations and work-like procedures; understanding and remembering short, simple, and detailed instructions; carrying out short, simple, and detailed instructions; maintaining attention and concentration for extended periods of time; performing activities within a schedule and maintaining attendance and punctuality; sustaining ordinary routine without special supervision; working in coordination and proximity to others without distraction; making simple work-related decisions; completing a normal workday or workweek without interruptions from psychological based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting.  (Tr. 351-352).  NP Benson found Plaintiff would have less, but noticeable, difficulty exhibiting awareness of normal hazards and taking appropriate precautions, and would have noticeable difficulty for no more than ten percent of the work day or work week: interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and setting realistic goals or making plans independently of others.  (*Id.*).  NP Benson included no explanation or elaboration in support of his opinion.  (Tr. 352).

### b. DR. JAGAR

Plaintiff saw Dr. Jagar for a follow-up appointment on December 24, 2008 for the following listed issues:  shoulder and neck pain; history of hypertension; bipolar disorder;

5

alcohol use (currently pending with Mr. Clepper for treatment); and a history of hyperlipidemia. (Tr. 300).  On examination, Dr. Jagar finds Plaintiff's blood pressure up (though better on recheck), and it notes Plaintiff stated his blood pressure increases when he drinks alcohol.  (Tr. 300).  He also notes an X-ray of Plaintiff's shoulder was normal, nothing irregular on his neck except a cystic nodule behind his right ear, and that Plaintiff twice did not show for an evaluation with a physical therapist for his pain (Tr. 300-301).

At the same visit, Licensed Practical Nurse Diane K Giovanini made the following notes in her intake report:  pain scale documented at "0"; high blood pressure; a positive alcohol screening test and Plaintiff reports that he drinks one to two alcoholic drinks, four or more times a week, during the past year, but never six or more drinks on one occasion.  (Tr. 302-303).

Plaintiff again saw Dr. Jagar on March 4, 2009 for the same above-listed issues, and progress notes reveal the same findings as at the December 24, 2008 appointment.  (Tr. 283-285).  Notes refer to Dr. Jagar's discussing with Plaintiff that alcohol use may contribute to his mental health issues, that he is unable to maintain employment due to his bipolar disorder, and that Plaintiff will continue care through a mental health clinic.  (Tr. 284-285).

Also at this time Dr. Jagar filled out a Mental Functional Capacity Assessment where he noted Plaintiff has the following marked limitations in his abilities to:  remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions and detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain an ordinary routine without special supervision; work in cooperation with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal work day and work week without interruptions from psychologically-based

6

symptoms and to perform at a constant pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. (Tr. 259). He additionally lists moderate limitations in social interaction and adaptation abilities, and does not rate his ability to travel in unfamiliar places or use public transportation. (Tr. 259). Further, Dr. Jagar rates Plaintiff as extremely limited in his ability to push/pull, reach, or handle, due to his tremors. (Tr. 262). Based on this assessment, Dr. Jagar opined Plaintiff is unemployable. (Tr. 259). This assessment lists Plaintiff's chronic medical conditions as bipolar II disorder and tremor related to anxiety, but has good/stable health with treatment. (Tr. 260-261).

On March 10, 2010, Plaintiff returned to Dr. Jagar with a main concern of tremors affecting both arms and legs, but with no significant balance problems. (Tr. 335). Plaintiff reports that the tremors affect his guitar playing and writing, and gets worse when he is anxious, such as when performing on stage. (*Id.*). Dr. Jagar lists a history of significant alcoholism, with past issues of alcohol use and macrocytosis. (Tr. 335-336). His current assessment and plan includes treatment for bipolar disorder, anxiety, and tremor, essential versus intentional, with a history of alcoholism. (Tr. 337). At this appointment Carla Walton, LPN, documented a negative Audit-C alcohol screening test, and noted Plaintiff stated he drank alcohol on a monthly or less basis during the past year, with one or two drinks per occurrence. (Tr. 334).

Plaintiff returned to Dr. Jagar on April 21, 2010, for a follow-up for problems as documented at his previous appointment on March 10, 2010, with tremors as his main concern. (Tr. 359-360). Dr. Jagar's report lists Plaintiff's history of hypertension as affected by alcohol use, and he and Plaintiff's previous discussions regarding how his alcohol use may contribute to Plaintiff's mental health issues and macrocytosis. (Tr. 359).

c. OTHER EVALUATIONS

7

Plaintiff had an initial psychiatric evaluation on May 3, 2007, conducted by PPBH, where he was diagnosed with bipolar I d/o, with a need to rule out alcohol and cannabis abuse.  (Tr. 219).  In this evaluation, Plaintiff reports extended periods of depression, crying spells, irritability, anxiety, sleep problems, decreased energy, motivation, and appetite, problems with memory and concentration, and past suicidal ideation and attempts.  (Tr. 216).  Plaintiff also reports intermittent periods of high energy, during which times he becomes very impulsive and shows poor judgment.  The report shows Plaintiff as well-groomed, with cooperative behavior, logical thought processes, intact insight and judgment, and no impairment to concentration or memory.  (Tr. 219).  During this assessment Plaintiff admits to heavy use of alcohol beginning at age 30, and last drank alcohol one week prior to the assessment.  (Tr. 216).  At the time of the assessment, Plaintiff was living with his mother.  (Tr. 217).

On April 15, 2008, Plaintiff was examined by Robert F. Dallara, Jr., Ph.D., on referral from the Bureau of Disability Determination.  (Tr. 242).  Dr. Dallara notes Plaintiff walked to the appointment and served as the only informant.  (Tr. 242).  According to Plaintiff, he graduated from high school, was enrolled in regular classes, had good attendance, and got along adequately with teachers and students.  (Tr. 243).  Additionally, Plaintiff states he was honorably discharged from the United States Navy for psychiatric difficulties, after serving from 1986 through 1989. (Tr. 243).  Plaintiff denies community difficulties, with the exception of one previous DUI arrest. (Tr. 243).  Plaintiff alleges he would have difficulty working because of panic attacks, frequent crying, and sleeping problems, and reports suicidal ideation.  (Tr. 243).  He further reports that he previously had some difficulty with alcohol, but that he has not used alcohol in the past year, and denies any treatment for alcohol or drug abuse problems.  (Tr. 244).  Dr. Dallara notes normal appearance and behavior, appropriate conversation and thought, reports of depressed

8

mood and anxiety but no overt signs of anxiety, low average cognitive functioning, and mildly impaired insight and judgment.  (Tr. 244-245).  Plaintiff asserts some days he does not get out of bed, but occasionally cooks, cleans, does laundry, and shops.  (Tr. 245).

Dr. Dallara diagnoses Plaintiff with bipolar disorder and panic disorder, with a GAF of 52.  (Tr. 246).  He also makes the following findings as to Plaintiff's work-related mental abilities:  moderately impaired ability to relate to others, including fellow workers and supervisors; adequate ability to understand, remember, and follow instructions, with no significant difficulties with comprehension or memory; adequate ability to maintain attention and concentration, with no direct evidence suggesting impairment to persistence or pace; and moderately impaired ability to withstand stress and pressure associated with day-to-day work activity.  (Tr. 246). He additionally finds Plaintiff has the ability to manage his own funds in his best interest.  (Tr. 246).

On April 30, 2008, Robelyn Marlow, Ph. D. completed a Psychiatric Review Technique assessment on Plaintiff.  The assessment lists Plaintiff as having anxiety-related disorders (12.06) (specifically anxiety disorder, NOS), and substance addition disorders (12.09), described as behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system (specifically alcohol and cannabis dependence). (Tr. 223, 228, 231). Base on her assessment, Dr. Marlow made the following determinations regarding Plaintiff's functional limitations:  mild limitations relating to activities of daily living, and difficulties in maintaining social functioning; moderate limitations relating to difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (Tr. 233).

Dr. Marlow also completed a Mental Residual Functional Capacity Assessment, also dated April 30, 2008.  (Tr. 237-239).  Here, Dr. Marlow made the following conclusions

regarding Plaintiff's limitations:  no evidence of limitation in Plaintiff's ability to remember locations and work-like procedures, or to understand, remember, and carry out very short and simple instructions; no significant limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted; make simple work-related decisions, to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others; and moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual, complete a normal work day or work week without interruptions from psychologically-based symptoms and to perform at a consistent pace and without unreasonable number and length of rest periods, to interact appropriately with the general public, to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting.  (Tr. 237-238).

Dr. Marlow provides a full elaboration on her summary conclusions, which includes a discussion of Plaintiff's claims and Dr. Marlow's opinions.  Plaintiff told Dr. Marlow he lives in an apartment independently, cooks, cleans, does laundry and shops, that he can't stand talking to anyone, has difficulty leaving his apartment due to fear, and bathes only about once every two weeks.  (Tr. 238).  Plaintiff reports having no friends, yet gets rides to appointments and to the food bank.  (*Id.*).  Plaintiff claims he has not used alcohol or marijuana in the past year, but Dr. Marlow notes that his reports of periods of depression and high energy in his May 2007

evaluation were consistent with drinking and smoking marijuana on a regular basis, and such

behavior mirrors that of bipolar disorder symptoms.  (*Id.*).  She further notes Plaintiff claims he

becomes panicky around people, although he did not display any signs of anxiety during his

April 2008 evaluation, and opines that Plaintiff can relate appropriately but is socially avoidant,

and would not work well with the public.  (*Id.*).

Dr. Marlow's April 30, 2008 assessment was affirmed on August 5, 2008, by Bruce

Goldsmith, Ph.D.  (Tr. 250).

On May 5, 2008, an undetermined physician at PPBH signed a statement for the Veterans

Service Commission, which issued a disability certificate for Plaintiff on April 23, 2008.  (Tr.

247).  This report notes Plaintiff's complaints of an inability to function socially or

economically, and that he "drinks alcohol in spite of this."  (Tr. 247).  Plaintiff is diagnosed with

bipolar disorder, mixed typed, and alcohol abuse.  (Tr. 247).  The report further indicates

Plaintiff is unable to work and that his disability will continue for several years.  (Tr. 247).

Various PPBH Medication Management Progress Notes reports are included in the

transcript. Between July and December 2008,  the reports indicate Plaintiff generally maintains

adequate grooming and hygiene, is anxious and depressed but exhibits a pleasant mood, has

generally appropriate, but sometimes labile, affect, and complains of no side effects from

medications other than tremors.  (Tr. 251-253).  It further notes a tearful discussion about his

father's suicide, and indicates Plaintiff's claims of suicidal ideations.  (Tr.  251-253).

Plaintiff was referred by NP Benson to William H Clepper, Rehabilitation Technician, for

his alcohol abuse.  (Tr. 295).  Mr. Clepper's progress notes dated January 8, 2009, show Plaintiff

diagnosed with substance abuse and referred to a community-based outpatient clinic for an

intake screening.  (Tr. 296).  The report shows Plaintiff drinks one twenty-four ounce beer per

day, with his last use listed on January 7, 2009.  (Tr. 296).  Plaintiff informs Mr. Clepper he used

to drink a fifth of vodka each day, but that he can no longer afford this and currently only drinks

a small amount.  (Tr. 298).  Plaintiff indicates he experiences blackouts.  (Tr. 297).  Plaintiff also

states he never attended a treatment program, but recently started attending a recovery program

at his church, and is willing to start at the community-based outpatient clinic once he can get

transportation.  (Tr. 298).

Plaintiff saw Dr. Seyed Shahmedhdi, a family practitioner, on March 5, 2010, for a

follow-up appointment for his tremors and back pain.  (Tr. 353).  Dr. Shahmedhdi's assessment

indicates possible early-onset Parkinson's Disease, for which Plaintiff is prescribed medication

and referred to a neurologist.  (Tr. 353).  He notes Plaintiff's history of anxiety and bipolar

issues, and no mention is made regarding Plaintiff's history of alcohol abuse.  (Tr.  353).

## II.  ALJ'S RULING

The ALJ applied the standard five-step sequential analysis[1] in evaluating Plaintiff's

applications for benefits.  At step one of the evaluation process, the ALJ found Plaintiff has not

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential
analysis in making a determination as to "disability".  *See* 20 C.F.R. § 416.920(a). The Sixth
Circuit has summarized the five steps as follows:

    (1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is
not disabled.

    (2)     If a claimant is not doing substantial gainful activity, her impairment must be
severe before she can be found to be disabled.

    (3)     If a claimant is not doing substantial gainful activity and is suffering from a
severe impairment that has lasted or is expected to last for a continuous period of
at least twelve months, and her impairment meets or equals a listed impairment,
the claimant is presumed disabled without further inquiry.

engaged in substantial gainful activity since the alleged onset date of September 30, 2007.  (Tr. 18).  At step two, the ALJ held Plaintiff suffers from the following severe impairments:  bipolar disorder and alcohol abuse.  (Tr. 19).  The ALJ additionally noted that Plaintiff's reported hand tremors does not constitute a severe impairment.  (19-20).  At step three, the ALJ ruled Plaintiff's impairments, including the substance use disorder, meet the listed impairments at sections 12.04 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).  However, although the ALJ determined that Plaintiff would still suffer from severe impairments if he stopped the substance use, he ruled that, without the substance use, these impairments would not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).  (Tr. 22).

Before moving to the next step, the ALJ assessed Plaintiff's residual functional capacity ("RFC") to work.  (Tr. 23-27).  The ALJ concluded Plaintiff would retain the following RFC if he stopped the substance use:  Plaintiff would be limited to tasks that are simple, routine, low-stress and not in public, and that involve no interaction with the public, and no more than superficial interaction with co-workers and supervisors; and he would be precluded from tasks that involve high production quotas, strict time requirements, arbitration, negotiation,

---

(4)      If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)      Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

confrontation, directing the work of others, or being responsible for the safety of others.  (Tr. 23).  As a result, at step four, the ALJ ruled Plaintiff, if he stopped the substance use, could not return to any of his past relevant work because those jobs exceed his current RFC.  (Tr. 27).  However, at the final step of the sequential analysis, the ALJ concluded if Plaintiff stopped the substance use, he would not be disabled because there are other jobs existing in significant numbers in the national economy that Plaintiff could perform, such as laundry laborer, bench assembler, or wire worker.  (Tr. 28).  The ALJ thus concluded Plaintiff's substance use is a contributing factor material to the determination of disability under 20 CFR §§ 404.1535 and 416.935, and ruled Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his decision.  (Tr. 28).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 Fed.Appx. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

Plaintiff attacks the ALJ's ruling on three grounds.  First, Plaintiff argues the ALJ failed to state valid reasons for not assigning controlling weight to treating source opinions, namely Dr. Jagar and Nurse Practitioner Benson.  Second, Plaintiff argues the ALJ's finding of "not disabled" was in error due to a lack of evidence contradicting Plaintiff's claim that substance abuse was not a contributing factor. Third, Plaintiff argues the ALJ's decision at Step Five of the sequential analysis relied solely on improper VE testimony.  These arguments are addressed below.

1. WEIGHT ASSIGNED TO PLAINTIFF'S TREATING PHYSICIANS' OPINIONS IS SUPPORTED BY SUBSTANTIAL EVIDENCE

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of the person's health and treatment history.  *Id*; 20 C.F.R. § 416.927(c)(2).  Opinions from such physicians are entitled to controlling weight only if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Id.*

When an ALJ determines a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight is appropriate:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) any other factors which tend to support or contradict the opinion.  *Id.*  Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id.*

Also relevant to the ALJ's treating source analysis in this case is his rejection of Plaintiff's credibility regarding his statements in evidence throughout the record.  The ALJ is responsible for evaluating the credibility of a witness, and this finding must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d, 234, 247 (6th Cir. 2007); SSR 96-7p.  In his opinion, the ALJ points to numerous inconsistencies and exaggerations that negatively affect Plaintiff's

credibility.  (Tr. 19-20, 26).  For example, the ALJ finds no medical evidence to support Plaintiff's allegations of severe hand tremors, and notes Plaintiff's earlier allegations that such tremors affected his on-stage guitar playing, followed by testimony that he rarely plays guitar and has never been onstage.  (Tr. 26).  Further, the ALJ considers NP Benson's questioning as to the veracity of Plaintiff's complaints, indicating he observed Plaintiff's hand tremors stopped when "distracted or when he feels he is not being observed," and on another occasion noted "when [Plaintiff] is seen waiting for his visit with me he appears fine, controlled, no tremors, but becomes tearful, anxious and tremorous in my presence."  (Tr. 19-20, 26).  The ALJ also points to "inconsistent reports of alcohol consumption" accompanied by conflicting treatment notes, as well as inconsistencies between Plaintiff's daily activities and his testimony that he is unable to go anywhere unaccompanied.  (Tr. 26).  Based on numerous inconsistencies throughout the record, the ALJ clearly supports why he finds Plaintiff's testimony lacking in credibility regarding both his claims of sobriety and the extent of his impairments in general.  (Tr. 26).

Plaintiff's argument that no record evidence supports the ALJ's conclusion with respect to weight assigned to treating source opinions, namely those of Dr. Jagar and NP Benson, is without merit.  In his opinion, the ALJ refers to the extended relationship Plaintiff had with Dr. Jagar and NP Benson for treatment of bipolar disorder and related impairments, as well as for his alcohol abuse.  In analyzing the treatment notes of both practitioners, the ALJ finds evidence suggesting suspicions of continuing alcohol use by Plaintiff, even after Plaintiff's claims of sobriety.  (Tr. 25).  Further, the ALJ points to notes from early in NP Benson's treatment that specifically list Plaintiff's alcohol abuse as a "chronic risk factor," indicating his view that Plaintiff's alcohol use is an ongoing factor, despite Plaintiff's claims of minimal alcohol consumption.  (Tr. 25).  Finding no indication in their treatment notes that the practitioners

17

believed Plaintiff was no longer drinking, along with evidence of suspicions to the contrary, the ALJ's assignment of full weight to both opinions regarding Plaintiff's functioning while using alcohol, but less weight in the absence of alcohol use, is supported by substantial evidence.

Plaintiff's argument that treatment notes showing periods of sobriety undermine the ALJ's determinations of weight is not supported.  Plaintiff relies solely on his own statements, bolstered by no medical evidence beyond the documentation of those statements in treatment notes, to reinforce his claims of abstinence from alcohol.  However, the ALJ clearly established, based on examination of inconsistencies throughout the record, that he finds Plaintiff's statements lack credibility.  (Tr. 26).  Thus, Plaintiff's argument that these treatment notes reflecting Plaintiff's own reports of abstention are evidence of significant periods of sobriety improperly relies on Plaintiff's own, discredited testimony and is not supported by credible evidence.

## 2. THE ALJ PROPERLY FOUND PLAINTIFF'S ALCOHOLISM IS A CONTRIBUTING FACTOR MATERIAL TO THE DETERMINATION OF DISABILITY

Plaintiff alleges the ALJ erred in finding that his alcohol use is a contributing factor material to his determination of disability. Where a claimant is found disabled, and the record shows material evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a).  The process by which the ALJ makes this determination is as follows:  (1) The ALJ determines whether the claimant would still be disabled if alcohol or drug use ceased; (2) in making this determination, the ALJ evaluates which of the claimant's current physical or mental impairments, upon which the original disability determination was based, would remain if the claimant stopped using drugs or alcohol.  20 C.F.R. §§

18

404.1535(a)(1)-(2), 416.935(a)(1)-(2).  If the ALJ determines the remaining limitations are not

disabling, the alcoholism or drug addiction is considered a contributing factor material to the

determination of disability; similarly, if the remaining limitations are found disabling, a claimant

is disabled independent of the drug addiction or alcoholism and thus it is not considered a

contributing factor.  20 C.F.R. §§ 404.1535(a)(2)(i)-(ii), 416.935(a)(2)(i)-(ii).  The burden is on

the claimant to show the alcohol or drug addiction is not a contributing factor.  *Underwood v.*

*Comm'r of Soc. Sec.*, Case No. 4:08-CV-2540, 2010 WL 424970, *6 (E.D. Ohio Jan. 22, 2010)

(citing *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007)).

　　　　The ALJ properly weighed the evidence and found Plaintiff's alcohol use constitutes a

contributing factor material to the determination of disability.  Having assigned the opinions of

Dr. Jagar and NP Benson little weight regarding Plaintiff's functional abilities when not drinking

alcohol (as discussed above), the ALJ gives full weight to the opinions of Dr. Marlow and Dr.

Dallara.  From these opinions, and weighing the other evidence on the record (including

evidence of Plaintiff's symptoms and activities of daily living), the ALJ established the

following residual functional capacity for Plaintiff if he stopped drinking alcohol:  no exertional

limitations; limited to tasks that are simple, routine, low-stress and not in public and that involve

no interaction with the public and no more than  superficial interaction with co-workers and

supervisors; precluded from tasks that involve high production quotas, strict time requirements,

arbitration, negotiation, confrontation, directing the work of others, or being responsible for the

safety of others.  (Tr. 22-23, 26).  Based on the hypotheticals presented by the ALJ, the VE

testified that a hypothetical worker of Plaintiff's age, education, work experience, and residual

functional capacity when not drinking alcohol, could work in a number of occupations, including

laundry laborer, bench assembler, and wire worker, that exist in significant numbers in the

national economy.  (Tr. 25-28).  As the ALJ may rely on the VE's testimony as substantial evidence to support his finding, his determination that Plaintiff's remaining limitations would not be disabling if he stopped drinking alcohol is supported by substantial evidence.  *Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986).

Plaintiff's argument that the ALJ failed to fully and fairly develop the record by not discussing periods of alleged abstinence is without merit.  It is well-established that the ALJ has a duty to develop an adequate record to support his decision.  *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168 (6th Cir. 1990).  Plaintiff claims the ALJ considered no medical evidence from the time period which Plaintiff alleges constitutes a period of abstinence, pointing again to treatment notes of Dr. Jagar and NP Benson.  This assertion is misguided.  In his opinion, the ALJ clearly discredits Dr. Jagar and NP Benson's treatment notes to the extent that they include claims made by the Plaintiff as to his sobriety, as they are based on nothing more than the Plaintiff's own testimony which the ALJ deemed not credible.  (Tr. 25).  Further, the ALJ points to evidence in these accounts indicating NP Benson and Dr. Jagar suspect ongoing alcohol use, beginning in 2008 and continuing through Plaintiff's treatment in 2010.  (Tr. 25).  The ALJ's failure to rely on Plaintiff's discredited claims of abstinence does not amount to reversible error for failure to fully develop the record.  Further, as discussed in the preceding paragraph, the ALJ's determination is supported by substantial evidence on the record, and Plaintiff has failed to meet his burden

3. <u>THE ALJ PROPERLY RELIED ON VE TESTIMONY</u>

a. THE HYPOTHETICALS POSED BY THE ALJ WERE SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues the ALJ improperly relied on VE testimony based on hypotheticals that inaccurately portrayed Plaintiff's limitations, thus leaving his decision at Step Five unsupported by substantial evidence.  "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 2002) (internal citations omitted).  Plaintiff contends the ALJ's limitation of Plaintiff "to superficial interactions with supervisors and co-workers," included in both hypotheticals, does not accurately describe Plaintiff's mental impairment when not using alcohol.  (Tr. 58-68).  Rather, Plaintiff points to the opinion of NP Benson to support rejection of this part of the hypotheticals, claiming Plaintiff would have noticeable difficulty sustaining an ordinary routine without special supervision, and would face similar limitations if required to work in close proximity with others.  (Tr. 351).

The hypothetical questions posed by the ALJ to the VE are supported by substantial evidence.  While hypotheticals must accurately portray a claimant's impairments, they "need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  The ALJ makes clear in his opinion that, although NP Benson's opinion is given full weight regarding Plaintiff's functioning when using alcohol, it is given less weight regarding his functioning when sober.  (Tr. 22, 25).  Full weight is given instead to the opinions of Dr. Marlow and Dr. Dallara (with the exception of Dr. Dallara's limiting Plaintiff to simple, routine tasks, which was given less weight) regarding Plaintiff's functional capacity in the absence of alcohol.  (Tr. 25-26).  In his opinion, the ALJ points to Dr. Dallara's determination that Plaintiff had moderate limitations in his ability to relate to others,

21

including fellow workers and supervisors, to withstand the stress of daily work, and had no

significant limitations to follow instructions or maintain attention and concentration.  (Tr. 25,

246).  Further, Dr. Marlow's assessment indicated Plaintiff had no significant limitations to

sustain an ordinary routine without special supervision, to work in coordination with or

proximity to others, and to get along with coworkers.  (Tr. 237-238).  As the ALJ gave these

opinions full weight regarding Plaintiff's functional abilities when not using alcohol, and relied

on these when formulating his hypotheticals, the ALJ's hypotheticals and corresponding RFC

decision are supported by substantial evidence.

### b. VE'S QUESTIONING OF THE PLAINTIFF DURING HEARING WAS NOT REVERSIBLE ERROR

Plaintiff further argues the ALJ committed reversible error by allowing the VE to question

Plaintiff during the hearing, in violation of the Social Security Administration Office of

Disability Adjudication and Review Hearings, Appeals and Litigation Law Manual

("HALLEX").  The provision states "[t]he ALJ will not ask or allow the VE to conduct any type

of vocational examination of the claimant during the hearing."  HALLEX I-2-6-74(C), 1993 WL

751902 (S.S.A.).  At the hearing, the ALJ allowed the VE to directly question Plaintiff as to his

training and past work as an eyeglass technician and in data entry accounting.[2]  (Tr. 52-53, 56).

---

[2] The following excerpt is from the oral hearing transcript, where the VE directly questions Plaintiff:

VE:  Sir, it – when you were an eyeglass technician, did you – did you work standing or sitting on that job?

CLMT:  Both.

VE:  Were you – were you standing more or sitting more?

CLMT:  Well, it just depends.  Sometimes, I had to sit down, looking for lenses, and then sometimes, I had to stand up to make 'em.  It varied.  I don't remember exactly.

Plaintiff argues reversal is necessary because such questioning was not only in violation of

HALLEX, but also prejudicial and adversarial in nature, thereby denying Plaintiff of a full and

fair hearing on his claim.

---

VE: I understand – I understand.  Now, it sounds like you worked in several different places doing that so I'm sure you've got a lot of experience, but when you first started, how did you get your training?  How did you learn how to do that work?

CLMT: I think they taught me; I don't remember exactly.

VE: Okay.  Do you remember – did you – did you go to a school or did your employer teach you on the job?

CLMT:  Employer.

VE: Uh-huh.  And about how long did it take before you were able to do it on your own without someone assisting you or giving you instruction?

CLMT: I don't remember, sir.

VE: Could it have been less than a week?

CLMT: No, sir.

VE: Probably a little longer than a week, huh?  How about –

CLMT:  Yes, sir.

VE:  -- a month?  Would it – would it – would it take a month to learn that job?

CLMT:  Probably.  I don't even remember how to do it now.  I don't – I just don't remember.

VE: Okay.  Well, thank you sir.  I don't have any other questions.

[…]

VE: Do you remember doing that job, sir?

CLMT: I just remember putting – typing stuff.

VE: Data entry?

CLMT: Yeah, that – yeah.

VE: That's probably more of what you were doing.  You weren't an accountant then.  You were really just entering accounting information in the record, right?

CLMT: I think so, yes, sir.

(Tr. 52-53, 56).

The VE's questioning did not constitute reversible error.  First, although HALLEX provides procedural guidance that may be considered, these guidelines are not binding on the Court.  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008).  Second, although Plaintiff correctly argues some U.S. District Courts have been willing to find reversible error for HALLEX violations that cause prejudice so as to deny a claimant a fair hearing, the questioning here did not cause prejudice.  Based on the hearing transcript, the questions presented to Plaintiff by the VE merely clarified the method and duration of training for his work as an eyeglass technician, and the type of work performed while working in a company's accounting department.  (Tr. 52-53, 56).  These questions did not amount to an adversarial attack detrimental to Plaintiff's credibility, as suggested by Plaintiff.  Plaintiff's rights were further protected by his representation by counsel, who was present at the hearing.  (Tr. 34).  Accordingly, Plaintiff's claim of reversible error due to the VE's questioning is without merit.

## VI.  **DECISION**

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  April 18, 2013.